IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 07-cv-01609-WYD

BRIAN CALCARI,

    Applicant,

v.

EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF CORRECTIONS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

ORDER DENYING 28 U.S.C. § 2241 APPLICATION

---

Applicant, Brian Calcari, is a prisoner in the custody of the Colorado Department of Corrections (DOC) who currently is incarcerated at the Sterling, Colorado, correctional facility. He initiated this action by filing *pro se* an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his January 1, 2003, disciplinary conviction on charges of tattooing and/or possession of tattoo paraphernalia. He has been granted leave to proceed pursuant to 28 U.S.C. § 1915 without payment of the $5.00 filing fee.

On August 21, 2007, I directed the respondents to file an answer to the 28 U.S.C. § 2254 application. On September 13, 2007, after being granted an extension of time, the respondents filed an answer.

I must construe liberally the application filed by Mr. Calcari because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  After reviewing the entire file, I find that an evidentiary hearing is not necessary.  For the reasons stated below, the 28 U.S.C. § 2254 application will be treated as an application pursuant to 28 U.S.C. § 2241, and will be denied.

### I. Factual and Procedural Background

Mr. Calcari was sentenced to the custody of the DOC following his 1996 convictions for murder accessory, assault, and assault accessory.  On December 20, 2002, DOC officers were conducting random cell searches at the Fort Lyon, Colorado, correctional facility, where Mr. Calcari then was incarcerated.  While searching cell number 201 in cell house 7, corrections officers, J. Jaramillo and T. Ruiz, discovered a tattoo gun, several needles, eraser tops, a black ink pen, a pair of rubber gloves, and a bottle of black ink.  The tattoo paraphernalia was discovered hidden in the false ceiling in a cell assigned to four inmates, including Mr. Calcari, who on December 21, 2002, admitted ownership of these items.  *See* answer, ex. A.  Possession of tattoo paraphernalia expressly was prohibited by the DOC's Code of Penal Discipline.  *See* application, ex. A (*Calcari v. Herrera*, No. 05CA1165 (Colo. Ct. App. Oct. 13, 2006) (not published)) at 1.

On December 30, 2002, Mr. Calcari was served with a notice of charge, charging him with a class II rule 20 violation of the Code of Penal Discipline, i.e., tattooing and/or possession of tattoo paraphernalia.  Because he originally was served with a notice of charge lacking a supervisor's signature, the DOC, after discovering this omission, served Mr. Calcari two hours later with a properly executed copy of the notice.

At a hearing on January 2, 2003, Mr. Calcari pleaded guilty to the disciplinary charge, and presented no witnesses or evidence. He admitted at the hearing that the tattoo paraphernalia was his. He testified on the record that his plea was knowing and voluntary. He was found guilty as charged, and sentenced to ten days of punitive segregation and to thirty days' loss of privileges. *See* answer, ex. B. Mr. Calcari was held in punitive segregation from January 2 to 15, 2003.

On January 7, 2003, Mr. Calcari appealed the disciplinary conviction pursuant to Code of Penal Discipline procedures. After considering Mr. Calcari's appeal, including listening to the tape recording of the disciplinary hearing, a hearing officer on March 4, 2003, upheld the disciplinary conviction. The hearing officer found that all procedures at Mr. Calcari's disciplinary hearing were followed appropriately, that an amended notice of charge was served on him in a timely and proper manner, that from January 2 to 12, 2003, Mr. Calcari was in punitive segregation at Bent County Correctional Facility, and that from January 13 to 15, 2003, he was at Bent County Correctional Facility awaiting placement review, approval through the DOC's central office, and transport to the Fort Lyon Correctional Facility. *See* answer, ex. C at 2. On March 6, 2003, Mr. Calcari received a copy of the denial of his appeal.

On March 13, 2003, Mr. Calcari initiated an action pursuant to Rule 106(a)(4) of the Colorado Rules of Criminal Procedure in Bent County District Court, requesting judicial review of the disciplinary proceedings. In the Colo. R. Crim. P. 106(a)(4) action, he alleged three claims: (1) that the officers who found the tattoo paraphernalia did not fill out the shakedown slip correctly because they failed to include his room and DOC number, (2) that the supervisor did not sign and certify the first notice of charge served

3

on him, and (3) that he spent three extra days in segregation beyond the ten-day period of punitive segregation imposed at his disciplinary hearing. *See* answer, ex. D at 3; *see also* application, ex. A (No. 05CA1165) at 3-5.

The district court denied his claims, and upheld the DOC's disciplinary conviction. On October 12, 2006, the Colorado Court of Appeals affirmed the district court's decision, declining to consider Mr. Calcari's third claim concerning the extra three days he spent in segregation because judicial review under Colo. R. Crim. P. 106(a)(4) is limited to judicial and quasi-judicial action and during those three days Mr. Calcari was awaiting placement review, approval through the DOC's central office, and transport back to the Fort Lyon Correctional Facility, all events the appeals court found resulted from administrative or ministerial action by the DOC. *See* application, ex. A (No. 05CA1165) at 5-6. On July 10, 2006, the Colorado Supreme Court denied certiorari review.

On July 23, 2007, Mr. Calcari submitted the instant habeas corpus application to this court, which filed the application on July 31, 2007. He asserts three claims:

> 1. That corrections officers, J. Jaramillo and T. Ruiz, failed to indicate his room and DOC number on his shakedown slip;
>
> 2. That his due process rights were violated because the reviewing supervisor failed to follow procedure in signing and certifying the initiating employee's summary statement, and;
>
> 3. That his prolonged retention in punitive segregation and failure to vacate the conviction after the sanctions had expired violated his rights to due process and cruel and unusual punishment.

## II. Analysis

At the threshold, I note that although Mr. Calcari originally filed his application under 28 U.S.C. § 2254, his application more properly is construed as an application under 28 U.S.C. § 2241 because he challenges the fact or duration of the execution of his sentence, rather than the validity of his underlying sentence or conviction. *See Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).

In his application, Mr. Calcari alleges that he lost good- and earned-time credits as a result of his disciplinary conviction. However, a review of the disposition of charges, *see* answer, ex. B, indicates that the only disciplinary penalties imposed upon Mr. Calcari were ten days of punitive segregation and thirty days' loss of privileges, i.e., gym, yard, library, visiting, and canteen limited to hygiene only. Therefore, Mr. Calcari's reference to the loss of good-and earned-time credits is unclear. I can only speculate that Mr. Calcari does not refer to any credits forfeited as a direct result of his disciplinary conviction, but rather to the loss of opportunity to be eligible for time deductions following his disciplinary conviction.

The Constitution guarantees due process when a person is to be deprived of life, liberty, or property. *See Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). The fact that Mr. Calcari may have been denied good- and earned-time credits did not deprive him of life or property. Therefore, the due process claim Mr. Calcari asserts in this action depends upon the existence of a constitutionally protected liberty interest.

The existence of a constitutionally protected liberty interest depends upon the nature of the interest asserted. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). A prisoner is not entitled to any procedural protections in the absence of a grievous loss.

*See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Generally, a liberty interest protected by due process may arise under the United States Constitution or state law. *See Sandin*, 515 U.S. at 483-84.  State law may create a liberty interest if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  State law also may create a liberty interest if the action inevitably will affect the length of the prisoner's confinement.  *See id.* at 487.

There is no constitutional right to good- and earned-time credits.  *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).  Colorado law also has not created a liberty interest in good- or earned-time credits.  *Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) (no right to earned-time credits); *Templeman*, 16 F.3d at 370 (no right to good- or earned-time credits); *Kodama v. Johnson*, 786 P.2d 417, 419 (Colo. 1990) (en banc) (no right to good-time credits); *People v. Turman*, 659 P.2d 1368, 1371 (Colo. 1983) (en banc) (same).

In Colorado, the deprivation of good-time credits does not affect the fact or duration of an inmate's confinement because good-time credits do not constitute service of an inmate's sentence; such credits accrued by an inmate simply affect his or her parole eligibility date.  *Rather v. Suthers*, 973 P.2d 1264, 1266-67 (Colo. 1999) (en banc); *Meyers v. Price*, 842 P.2d 229, 232 (Colo. 1992) (en banc); *Thorson v. Colorado Dep't of Corrections*, 801 P.2d 540, 541 (Colo. 1990) (en banc).  Respondents contend, and Mr. Calcari does not dispute, that he already has passed his parole eligibility date. Because good-time credits only relate to the determination of an inmate's parole eligibility date, and Mr. Calcari already is parole eligible, the award of additional good-time credits has no effect on him.

Likewise, the loss of earned-time credits do not affect the fact or duration of Mr. Calcari's confinement. The DOC may refuse to grant earned-time credit at any time for any reason. *Templeman*, 16 F.3d at 370. There is no provision in Colorado law that entitles an inmate to a deduction from his sentence for good behavior or progress in rehabilitation. *Rather*, 973 P.2d at 1266; *People v. Alderman*, 720 P.2d 1000, 1001-02 (Colo. App. 1986) (citing *Turman*, 659 P.2d 1368). The department of corrections retains the authority to grant or deny the award of earned-time credits. *Renneke v. Kautzky*, 782 P.2d 343, 344-45 (Colo. 1989) (en banc); *Bynum v. Kautzky*, 784 P.2d 735, 736 (Colo. 1989) (en banc). Therefore, any denial of good- and earned-time credits would not deprive Mr. Calcari of a liberty interest.

Mr. Calcari argues that his disciplinary conviction should be vacated because his due process rights were violated when officers J. Jaramillo and T. Ruiz failed to indicate his room and DOC number on his shakedown slip and the reviewing supervisor failed to follow procedure in signing and certifying the initiating employee's summary statement. To the extent Mr. Calcari alleges that the prison disciplinary proceedings did not comply with the requirements established by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974), the claim is without merit. A review of an applicant's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996). *Wolff* held that adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with advance written notice of the charges, an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous

to institutional safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied. *Id.* at 563-567; *see also Superintendent v. Hill*, 472 U.S. 445, 454 (1985). There is no indication in the file that the prison disciplinary hearing did not comply with the requirements established by the Supreme Court in *Wolff*.

Mr. Calcari also contends that his due process rights were violated because he spent three extra days in segregation beyond the ten-day period of punitive segregation imposed at his disciplinary hearing. Mr. Calcari does not dispute that the additional three days from January 13 to 15, 2003, were spent awaiting placement review, approval through the DOC's central office, and transport the Fort Lyons Correctional Facility, as found by the administrative officer on Mr. Calcari's appeal from his disciplinary conviction. *See* answer, ex. C at 2. Having to spend three days in segregation due to administrative actions does not rise to the level of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 483-84. Moreover, those three days do not appear to affect the length of Mr. Calcari's confinement. *See id.* at 487. Therefore, Mr. Calcari fails to allege facts that could support an arguable due process claim.

Lastly, Mr. Calcari's claim that he was subjected to cruel and unusual punishment because of the three extra days he spent in segregation is a conditions-of-confinement claim not cognizable in a habeas corpus proceeding. Therefore, I decline to address it.

### III. Conclusion

For the reasons stated above, habeas corpus relief will be denied. Accordingly, it is

ORDERED that the habeas corpus application pursuant to 28 U.S.C. § 2254, which I have treated as an application pursuant to 28 U.S.C. § 2241, is denied and the action is **DISMISSED WITH PREJUDICE** as meritless.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated:  October 15, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge